```
              UNITED STATES DISTRICT COURT
              EASTERN DISTRICT OF KENTUCKY
                CENTRAL DIVISION at LEXINGTON

AMERICAN GENERAL LIFE AND      )
ACCIDENT INSURANCE COMPANY,    )
                               ) Civil Action No. 5:08-176-JMH
                               )
     Plaintiff,                )
                               )
v.                             )
                               ) MEMORANDUM OPINION AND ORDER
                               )
DEBORAH BIRCHUM,               )
                               )
     Defendant.                )
                               )
```

                   **  **  **  **  **

This matter is before the Court on cross motions for summary judgment [Record Nos. 15 & 16]. Responses having been filed [Record Nos. 18 & 19] and the time for replies having expired, this matter is ripe for review.

**FACTS**

The life of Danny Birchum, the deceased husband of Defendant Deborah Birchum, was insured by life insurance policies issued by Plaintiff American General Life and Accident Insurance. Upon Mr. Birchum's death, Defendant was paid $100,067.15, the face value of policy number 195034179. This declaratory judgment action seeks to determine whether Defendant is entitled to the accidental death benefits provided for in the policies.

The parties' agreed statement of facts [Record No. 13] set forth the undisputed material facts in this case. On April 28, 1995, Plaintiff issued policy number 195034179 in the face amount

of $50,000.00 to insure the life of Danny Ray Birchum (the "1995 policy").  That policy contained an accidental death rider in the amount of $50,000.00.  On February 28, 1996, the face amount of policy number 195034179 was increased to $99,999.00.  The accidental death rider for that policy was also increased to $99,999.00.  Policy number 195034179 was a term life insurance policy that paid a predetermined amount of benefits if the insured died within the prescribed term.  Policy number 195034179 contained an accidental death rider that paid accidental death benefits if the insured died accidentally within the prescribed term.  On December 4, 2005, American General issued policy number 126973525 in the amount of $100,000.00 to insure the life of Danny Ray Birchum (the "2005 policy").  Policy number 126973525 was an accidental death policy only.  Policy number 126973525 only paid accidental death benefits if the insured died accidentally.

The insured, Danny Ray Birchum, died on May 21, 2007.  Shortly thereafter, the Defendant, Deborah Birchum, as the named primary beneficiary of policy number 195034179 and policy number 126973525, submitted a claim for benefits to American General for payment of benefits under both policies.  American General paid the face value of policy number 195034179 in the amount of $100,067.15 to Deborah Birchum in the form of a "Convenience Benefit Account."  American General declined to pay Deborah Birchum accidental death benefits under policy number 195034179.  American General declined to pay Deborah Birchum accidental death benefits under policy number

126973525.

While not stated in the joint statement of facts, the following undisputed facts are also material to this case. The Montgomery County Coroner's report states that the suspected cause of death was "acute combined effects of oxycodone & trazodone" and that the suspected cause of death was accidental. Record No. 15, Ex. No. 2 at 2. While no autopsy was performed, a blood sample was drawn from the decedent and submitted to the Kentucky Justice Cabinet's Office of Forensic Toxicology for analysis. The toxicology analysis indicated that the decedent's bloodstream contained the following drug concentrations: 2.5 mg/l Trazadone; 0.75 mg/l Oxycodone; and 0.20 mg/l Citalopram. *Id.* at 4. Decedent's death certificate states that the immediate cause of death was the "acute combined effects of oyxcodone & trazodone." Record No. 15, Ex. No. 1 at 1.

Three doctors rendered opinions as to the cause of decedent's death. On November 1, 2007, Dr. Richard Lane, American General's medical director, opined that the blood concentrations of Oxycodone and Trazodone were in excess of the recommended therapeutic range, suggesting that the decedent did not take the medications as prescribed. Record No. 15, Ex. No. 3 at 1. Dr. Lane supplemented his report on November 19, 2007, adding that even for a man weighing over four hundred pounds, the blood concentration of Oxycodone "significantly (20x) exceeded the therapeutic blood

3

levels." *Id.* at 2. Decedent's treating physician, Dr. Eric Bradburn also opined as to the concentration levels of Oxycodone and Trazodone, concluding that "both trazodone and oxycodone were within therapeutic range and not within toxic or lethal range." Record No. 15, Ex. No. 4 at 1.

After receiving conflicting opinions from Drs. Lane and Bradburn, American General obtained an independent medical opinion from Dr. George Nichols, II. In his January 10, 2008 letter, Dr. Nichols reported that "[m]ost published reference sources place the trazodone level as high 'therapeutic', citalopram as sub-therapeutic and oxycodone as 'toxic'. There is, however, no proof that oxycodone, alone or in combination, produced toxic, let alone fatal effect in Danny Ray Birchum." Record No. 15, Ex. No. 5 at 2. Dr. Nichols goes on to conclude "that the concentration of oxycodone reported in this case, 0.75 mg/L, cannot be reached with the drug instructions provided by Dr. Bradburn to Mr. Birchum. This level, given the weight and therefore fluid and tissue volume of Mr. Birchum indicate usage in excess of prescription directions." *Id.* at 3.

American General requested that Dr. Nichols supplement his January 10, 2008 report to address the issue of post-mortem drug redistribution. Specifically, Dr. Nichols was to consider the impact of the fact that while the time of injury was approximately 8:15 p.m. and the time of death was recorded as 8:55 p.m., the

4

blood sample was not drawn from the cardiac region until approximately 10:30 p.m.  By letter dated February 26, 2008, Dr. Nichols opined as follows:

> [I]t is my opinion that [sic] quantity of oxycodone found in post-mortem drug testing is artifactually [sic] elevated due to post-mortem redistribution.  This phenomenon occurs when people have taken certain drugs for weeks or longer.  If that person dies the drug will "leak" from tissues where the drug has been stored into the blood.  The quantity of measured drug will be elevated above the amount actually present in blood at the time of death.

Record No. 15, Ex. No. 7 at 2 (emphasis in original).  Dr. Nichols goes on to conclude, much as he did in his report dated January 10, 2008, that "[t]here is no definitive determination of the cause of death of Danny Birchum.  There is no proof that oxycodone alone, or in combination with other drug [sic], cause the death of Danny Birchum.  The cause of death is undetermined."  Id.

The life insurance policies at issue include provisions which exclude payment for accidental deaths that are drug related.  The 1995 policy defines accidental death as death that "(a) resulted directly, and independently of all other causes, from accidental bodily injury sustained while this rider was in force."  Similarly, the 2005 policy defines accidental injury as "accidental bodily injury to an insured Person, which is unforseen and suddenly sustained without the design or intent of such Insured Person."  In refusing to pay Defendant's claims for accidental death benefits, American General relied on the drug exclusion provisions of the

policies. The drug exclusion provision of the 1995 policy provides: "We will not pay any Accidental Death Benefit if the Insured consumes alcohol in such amounts as to directly cause his death or if the Insured's death is caused or contributed to by: . . . (e) an excitant, depressant, hallucinogen, narcotic or other drug, unless taken as prescribed by a licensed physician." Record No. 16, Ex. A. Similarly, the 2005 policy provides: "We will pay NO Accidental Death Benefit or Common Carrier Benefit for any Accidental Injury or any loss caused or resulting in whole or in part by the following: . . . (b) the Insured Person's being intoxicated or under the influence of any narcotic or any hallucinogenic unless administered on the advice of a Physician." Record No. 16, Ex. B.

**STANDARD OF REVIEW**

A grant of summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the initial burden to show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). This burden is met simply by showing the court that there is an absence of evidence on a material fact on which the nonmoving party has the ultimate burden of proof at trial. *Id.* at

325. The burden then shifts to the nonmoving party to "come forward with some probative evidence to support its claim." *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994). A material fact is one that may affect the outcome of the issue at trial, as determined by substantive law. *Celotex*, 477 U.S. at 325.

When determining if summary judgment is proper, the Court's function is not to weigh the evidence, but to decide whether there are genuine factual issues for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Multimedia 2000, Inc. v. Attard*, 374 F.3d 377, 380 (6th Cir. 2004). A genuine dispute exists on a material fact, and thus summary judgment is improper, if the evidence shows "that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248; *Summers v. Leis*, 368 F.3d 881, 885 (6th Cir. 2004). The evidence should be construed in the light most favorable to the nonmoving party when deciding whether there is enough evidence to overcome summary judgment. *Anderson*, 477 U.S. at 255; *Summers*, 368 F.3d at 885. While this Court must draw all inferences in a light most favorable to the plaintiff, summary judgment may be granted "if the record, taken as a whole, could not lead a rational trier of fact to find for [the plaintiff]." *McKinnie v. Roadway Express*, 341 F.3d 554, 557 (6th Cir. 2003) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

**ANALYSIS**

As an initial matter, the Court notes that this controversy is appropriate for declaratory relief. American General seeks a declaration of rights adjudging whether it is liable to Defendant for the payment of accidental death benefits under the 1995 and 2005 policies. The Declaratory Judgment Act, 28 U.S.C. § 2201, "provides courts with discretion to fashion a remedy in cases where federal jurisdiction already exists." *One Beacon Ins. Co. v. Gerard John Chiusolo, et al.,* 2008 WL 4463786 at 6 (6th Cir. Oct. 2, 2008)(unpublished). In the instant case, the court's jurisdiction to hear American General's declaratory judgment action arises out of diversity jurisdiction pursuant to 28 U.S.C. § 1332.

As the claimant beneficiary, Defendant does not dispute that she bears the burden of proof on the issue of accidental death. *Com. Life Ins. Co. v. Hall*, 517 S.W.2d 488, 491 (Ky. 1974); Record No. 18 at 1. Defendant must prove that the decedent "suffered an accidental injury which was the exclusive and independent cause of his death. Even if the proof shows an accidental injury contributed to or accelerated death by disease or illness, the [Defendant] has failed to carry the burden and cannot recover." *New York Life Ins. Co. v. Rees*, 341 S.W.2d 246, 248 (Ky. 1960).

As proof that the decedent's death was accidental, Defendant offers the decedent's death certificate and the coroner's report, both of which indicate that the manner of death was accidental. Unfortunately for Defendant, in Kentucky, a death certificate is

not admissible for the purpose of determining whether the decedent's death was accidental. *Kentucky Home Mut. Life Ins. Co. v. Watts*, 183 S.W.2d 499, 503 (Ky. 1944); *Com. Life Ins Co.*, 517 S.W.2d at 491.

Much like the coroner's report and death certificate, the opinions of Drs. Nichols, Bradburn, and Lane, also offer no support for Defendant's position that the decedent's death was accidental. While all of the doctors opine as to whether the drug concentrations in the decedent's blood at the time of death were within the expected ranges, not one of the three doctors opined that the decedent's death was accidental. In fact, Dr. Nichols specifically opined that "[t]here is no definitive determination of the cause of death of Danny Birchum. There is no proof that oxycodone alone, or in combination with other drug [sic], caused the death of Danny Birchum. The cause of death is undetermined." Record No. 15, Ex. No. 6 at 2.

In her memorandum in support of her motion for summary judgment and her response to American General's motion for summary judgment, Defendant appears to take the position that there are only two possible causes of the decedent's death - accident, which she bears the burden of proving, and suicide, which American General bears the burden of proving. The fact is, somewhere between suicide and accidental death lie a number of other possible reasons for the decedent's death. In fact, Defendant's own

memorandum states that "Mr. Birchum was not a healthy man on the date of his death," as he suffered from diabetes, hypertension, morbid obesity, and depression, among other ailments.  The only evidence which supports Defendant's position that decedent's death was accidental, the coroner's report and the death certificate, are inadmissible for proving the accidental nature of one's death. *Kentucky Home Mut. Life Ins. Co.,* 183 S.W.2d at 503; *Com. Life Ins Co.*, 517 S.W.2d at 491.  The remaining evidence, the reports from Drs. Lane, Nichols, and Bradburn, concludes only that the cause of death is undetermined.

Finding that Defendant has failed to carry her burden of proving that an accident was the "exclusive and independent cause" of the decedent's death, *New York Life Ins. Co.*, 341 S.W.2d at 248, the Court does not reach the issue of whether the drug exclusion provisions of the insurance policies preclude payment of the accidental death benefits.

## CONCLUSION

Accordingly, and for the foregoing reasons, **IT IS ORDERED**:

1) That Defendant's Motion for Summary Judgment [Record No. 15] be, and the same hereby is, **DENIED**; and

2) That Plaintiff's Motion for Summary Judgment [Record No. 16] be, and the same hereby is, **GRANTED.**

This the 5th day of November, 2008.



Signed By:
*Joseph M. Hood*
Senior U.S. District Judge